and Casualty Insurance Company. Good morning Judge Lynch, Justice Souter, Judge Chiatta, my name is Chip Muller and I represent Leanne Greenman. Ms. Greenman was pregnant when MetLife decided to terminate her and it is undisputed that the decision makers, Mr. Del Monte and Mr. Lundgren, knew that she was pregnant at the time the decision was made. We brought claims for pregnancy discrimination and FMLA retaliation. Perhaps the largest error by the district court below was the determination that Ms. Greenman was the least experienced individual in the department and the court found that Ms. Greenman did not dispute this fact and that was a mistake. MetLife put no evidence into the record whatsoever that Ms. Greenman was the least experienced individual. In fact, MetLife did not put any evidence in the record whatsoever of any employee's experience level. There is some evidence of the start date, certain employee's start date at MetLife but that says nothing about how experienced they were in marketing. Wasn't she in the lowest level possible position and the company decided it would eliminate that position as part of a layoff which also led to the layoff of a man who was her senior in terms of hierarchy of positions? I don't believe so, Your Honor. Mr. Longman's testimony was clear that he wanted or at least wanted to consider the possibility of terminating Diane Lang, the administrative assistant. You're not answering my question. Forgive me, Your Honor. Please answer it. Ms. Justice Souter has a question for you. Ms. Greenman was the lowest ranked of the so-called marketing professionals. However, the decisional list which is Exhibit 10 to Deb Dukla's deposition is an incomplete list. It's not the complete list of everyone who was in the department and everyone who was eligible. What's important to understand is that Mr. Longman's task was to cut the budget of the subset of that department. So every cost in that department was eligible to be cut. The fact that Ms. Greenman was the lowest ranked of a certain list of marketing professionals of marketing consultants did not mean that Diane Lang was ineligible for being cut. In fact, it was Mr. Longman whose idea was to cut Ms. Lang instead of Ms. Greenman because he felt that Ms. Greenman would be more useful in the next phase of the marketing effort with a smaller force. Mr. Del Monte had to go to battle with a smaller workforce. Additionally, there were temporary workers that were brought in who cost the department  It's unquestioned, undisputed that temporary workers worked in the department. They could have been cut as well if the criterion is least experienced. Mr. Del Monte provided clear testimony that the temps were entry-level workers. And so if the department is going to cut the least experienced employees, certainly a jury could find that the temporary workers could have been cut instead of Ms. Greenman because the temporary workers a jury could find were less experienced than Ms. Greenman. In addition, at the same time that the company decided to cut Ms. Greenman, they also decided to bring in Nick Adamo. The court below did not address this in any rigorous fashion, which I think was a mistake. Nick Adamo, there's no evidence of how experienced he was. There's no evidence that he was more experienced in marketing than Ms. Greenman. And yet they brought him on as a new cost, in fact costing 50% more than Ms. Greenman at the same time as they decided to cut her. Mr. Lundgren admitted in his deposition that it makes no sense to cut employees at a time when you're bringing in Mr. Adamo. And Mr. Lundgren thought that surely there was an additional person cut from the department, but in fact there was not. Mr. Adamo added to the headcount that it counteracted the cost-saving justification that the marketing department put forward for selecting Ms. Greenman for termination and Mr. Adamo was less experienced. Mr. Mueller, what you're doing is summarizing what I know is in your brief, but your brief does not respond to one point that I want to raise with you. That is, on page 7 of the government's brief, it makes reference to the statement of undisputed facts, specifically number 29, which the defendant proposed. And that is, as I'm quoting it, the decision to eliminate plaintiff's position and lay off plaintiff was made because plaintiff had less experience in marketing relative to the other members of the product marketing group. And according to what the government says, that particular proposed undisputed fact was left undisputed. Why isn't that the end of the case? I'll tell you why, Your Honor. Because number one is that the statement that MetLife put forward is that the decision to terminate or to select Ms. Greenman's position for elimination was because she had less experience. What that did not say is, it would have been clearer, it would have been dispositive if it had said Ms. Greenman was the least experienced. We did not admit that she was the least experienced. We admit that MetLife says that she was chosen because she was... That isn't what the statement of undisputed fact says. It doesn't say the defendant said that the decision to eliminate was for reasons of experience. It said the decision to eliminate the position and lay off the plaintiff was made because plaintiff had less experience in marketing. And it seems to me that your response to my question evades that fact. And so I still do not see why that really doesn't eliminate your case. Your Honor, according to the local rule in the District of Rhode Island, it says that any local rule 56-83 says any fact alleged in the movement statement of undisputed fact shall be deemed admitted unless expressly denied or otherwise controverted. And your Honor, I believe that within that local rule, we can controvert the allegation in another response in our statement of disputed facts. In other words, you don't have to do that in the course of responding to the proposed statement of undisputed facts. You can do it anywhere, anytime. No, your Honor, I believe that you must do it in the statement of disputed facts. And I believe that we did that in 26 on RA-86 in response to allegation 26. I believe we did it at RA-687 when we said that Lange's position was junior. We disputed that Lange's position was junior to Ms. Greenman with respect to marketing experience. Yes, but all you're doing in those allegations is saying, well, effectively, that Metlife was wrong. She wasn't the least experienced. Okay, let's assume you're right on that. But you've conceded they've terminated her because she was least experienced. So it seems to me to be irrelevant that they were wrong as long as that was their reason. Because if that was their reason, right or wrong, you lose. I don't think so, Your Honor, because we must be able to challenge the rationality of how we apply the decision. We can't challenge their criteria. But if Ms. Greenman does not fit their criteria, I believe that we have under case law of the First Circuit That would be true if, as Justice Souter said, the allegation said they claimed to have fired her because she was least experienced. And you admit that, but then establish over here she wasn't least experienced. But the allegation here that you admitted was that I believe that they terminated her because she was the least experienced. Suppose it said, if you admitted they terminated her because she was Martian. Well, they're wrong. But you lose your privacy discrimination case. But, Your Honor, how can we get insight into the decision-makers? I'm sorry, counsel. Your time is up. Thank you, Your Honor. And you do not question the judges of this court. All right? Thank you, Your Honor. We ask you questions. Counsel. Thank you, Judge Lynch. Judge Gallardo. Justice Souter. You'll have to speak up into the microphone. I said, thank you. I will be glad to answer any questions of the court on this case. I fear there aren't many. Certainly that statement of facts, paragraph 29, is a sticky wicket. But we certainly, as MetLife, understand that the rest of the record is pretty clear, too. It's a corporate-wide program. Managers like Bob Lundgren were told, tell us how you would cut. I think we gave calculations of the 5 to 25% he was to consider. He drew up strategies that even included himself. He was then told it's 8%, 800K, about a $10 million budget. And through a combination of programs and people, he did that. That's why temps aren't part of it. Temps aren't part of his budget. He has a budget. That's how budgets work. And you cut them. And so he made reasoned decisions to cut the individuals in the department that would have the least negative impact. And that's what the record showed. What do you mean by temps are not part of the budget? Forgive me, Judge. You said temps are not part of the budget. What did you mean? Temp expenses would be something that would be born as active cash paid while you're working. The same as you'd need paper or supplies versus in a projected budget of here's my headcount because headcount is controlled very carefully under managers in a business like MetLife. So the headcount that he's looking at would be the personnel budget not including temps because you use them or don't use them as this department did both before, during, and after the plaintiff's employment so that it wouldn't be what is on his back of the napkin if you would, Judge Lynch. Was there a discussion of paragraph 29 of the Statement of Material Facts with the court below? It does seem odd because it seemed very odd that a plaintiff would bring a pregnancy discrimination case. The whole thrust of the case is that she was terminated because of her pregnancy. You must have been quite surprised when you got back the response to your Statement of Material Facts where the plaintiff concedes away the whole case. May I please be candid with the court? Just tell me the record. Is there anything in the record that the plaintiff attempted to withdraw or offer an explanation? No, Judge. There is not. I suspect that it was an oversight which is why I'm saying that the remainder of the record also makes it startlingly clear of the basis for the decision, the lack of pretext in that basis because, of course, that is what employment law is and, of course, the startling lack of any discriminatory animus which, as you and Judge Lynch know from the Barnes case, when the record is rife with that type of evidence then there is certainly a myriad of circumstances. There is not a myriad of circumstances in an employment law case unless you get to the falsity of a decision that it's made up, that there's mendacity and not that there are threads around the edges because businesses, again, operate on a regular basis without attorneys second-guessing every word that's used. But, as I say, I'd be glad to add anything to the record or answer any questions. I believe one thing that would be helpful to point out is that AD, I believe it's 76, 7, and 8, what you see there, may it please the Court, is the OWBPA attachment. So we're getting ready to reduce our workforce. We give generous severance and in exchange get a release and because they're over 40, of course we have to comply with the OWBPA which is that attachment A that says here's the positions, persons, etc. This is an earlier version. It has the names. It has Nick O'Donnell's name. He was hired February 7, 2000. And it's pretty clear he's part of the department before the RIF because he's on the RIF list as one of the keepers. So... If you are caught by surprise by anything that's said, rebuttal will give you back some of your time. Oh, thank you. Well, let's wait and see. You have two minutes, rebuttal. In Traverse versus Flight Services, 737 F3rd 144 and many other First Circuit cases, this Court has made clear that it is the moving party's burden to prove its case. And I believe that MetLife's failure to put in any evidence whatsoever of the experience level of the employees, names that have been used, that it's a fact question for the jury. Regarding the local rule, the local rule says that facts shall be deemed admitted unless expressly denied or otherwise controverted. And I think the otherwise controverted is key here. It would be superfluous if it didn't mean something besides an express denial. And it's clear to everyone... Did you make this argument to Judge Lisi or to the Magistrate Judge? Your Honor... It's not in your brief. To us. Well, but what is in the record, Your Honor... Did you make this argument to either Judge Lisi or to the Magistrate Judge? That's a yes or no answer. No, Your Honor. MetLife did not raise it in their motion and the judge did not raise it at oral argument. At RA 238, which is just several lines above the plaintiff's statement of disputed facts, number 29, in 27, it is clear that Ms. Greenman alleges that Ms. Lange was more junior, less experienced than Ms. Greenman and we cite to the record which is unlike what MetLife did. Thank you. I think you were not surprised by anything. Thank you both. Thank you. I was surprised by everything.